## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GARY W. MOODY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-907-TWP-DML |
| | ) | |
| MICHAEL B. CLINE, VICTOR MENDEZ | ) | |
| and JOSEPH McGINNESS, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY DISCUSSING PENDING MOTIONS

This mater is before the Court on separate motions for summary judgment filed by Defendants Joseph McGuiness, in his capacity as Mayor of Franklin, Indiana ("Mayor McGuiness") (Dkt. 86), Michael B. Cline, in his capacity as Director of the Indiana Department of Transportation ("Mr. Cline") (Dkt. 83), and Victor Mendez, in his capacity as Administrator of the Federal Highway Administration ("Mr. Mendez") (Dkt. 80) (collectively, the "Defendants"). Plaintiff Gary W. Moody ("Mr. Moody"), a resident of Franklin, Indiana, challenges aspects of the City of Franklin, Indiana's ("City of Franklin") effort to upgrade existing road pavement, curbs and sidewalks along North Main Street and to improve drainage by constructing new storm sewer mains. This project is known as the North Main Street Improvement Project (hereafter, "the Project"). Mr. Moody seeks declaratory and injunctive relief on the bases that the Defendants' engaged in fraud, waste and abuse related to the Project. For the reasons stated below, the Defendants' motions for summary judgment are granted.

## I.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The

court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). If the moving party meets its burden of showing that there are no issues of material fact and that he or she is entitled to a judgment as a matter of law, the non-moving party must "go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted). "The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted). *See* Fed. R. Civ. P. 56(c)(1)(A),(B) (both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").

As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e). On summary judgment, a party must show the court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003).

## II. FACTUAL BACKGROUND

As an initial matter, the Court notes that Mr. Moody has not opposed the motions for summary judgment, either with evidentiary material or with a narrative statement suggesting that the Defendants are not entitled to summary judgment based on the pleadings and the evidentiary record. He has not filed a statement of material facts in dispute. The consequence of these circumstances is that Mr. Moody has conceded the Defendants' version of the facts. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921–22 (7th Cir. 1994). This does not alter the standard for assessing a Rule 56(a) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

As used in this Entry, "INDOT" refers to the Indiana Department of Transportation and its Commissioner; "FHWA" refers to the Federal Highway Administrator; "SHPO" refers to the Indiana State Historic Preservation Office; "NEPA" refers to the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321-4370h; "CEQ" refers to the federal Council on Environmental Quality; "NHPA" refers to the National Historic Preservation Act, 16 U.S.C. §§ 470f, 470h–2(f); "APE" refers to an area of potential effects; and "APA" refers to the Administrative Procedures Act, 5 U.S.C. § 702.

The purpose of the Project was to, *inter alia*, improve pavement, curbs and sidewalks; improve and provide increased drainage capacity, improve pedestrian and non-motorized traffic safety, and improve flow of traffic by replacing existing signs, traffic signals and adding new pavement markings, in the City of Franklin. The Project contained certain features, such as: The

3

terrain is flat with some deciduous and pine trees along the corridor. There are no wetlands within the proposed Project area, and no federally-endangered species exist or have habitat within its limits. There are no nature preserves or natural areas in the Project limits. The Project does not intrude on any karst features. The United States Fish and Wildlife Service determined that "project impacts will be minor in nature." The Indiana Geological Survey found that no unusual or problematic geological or topographic features will be impacted by the Project.

On April 7, 2005, the FHWA Division Administrator, Robert F. Tally, Jr., executed a document finding that the proposed Project would have "no adverse effect" on any resources or properties eligible for the National Register of Historic Places. The FHWA also determined that no buildings or objects would be demolished or relocated as part of the proposed undertaking. Incorporated within that finding was a determination that the APE for the Project extended from the existing right-of-way lines to the rear property lines and included those buildings, objects, and resources that fell within this area. All parcels that fronted the Project were considered to fall within the APE. Importantly, the SHPO concurred with the finding of "no adverse effect" to historic sites or properties.

On April 15, 2005, a Legal Notice for Public Comment was published in the Franklin *Daily Journal* newspaper to solicit comments from the public about the Project and the "no adverse effect" finding. On May 10, 2005, the Deputy State Historic Preservation Officer informed the FHWA that he concurred in the finding that no historic properties would be adversely affected by the Project.

In September 2005, the FHWA determined that the Project would have no impacts on travel patterns, air quality/land use, noise, wetlands, sole source aquifers or threatened and

endangered species, would not require more than five relocations, and would have no adverse impacts on historic resources (including historic homes in that area of Franklin), would not impair the use of Section 4(f) property (as defined in § 4(f) of the Department of Transportation Act, 23 U.S.C. § 138), and did not require the removal or alteration of historic objects or the disturbance of archeological resources that should be preserved in place. Based on these factors, the FHWA determined through a categorical exclusion ("CE") that the Project did not require an Environmental Impact Statement. INDOT issued a similar notice in August 2005.

A public hearing was held on the Project on August 12, 2008. The Project was thereafter revised by the City of Franklin from approximately 6,200 linear feet to 2,900 linear feet. Features of the revised Project were reassessed. The same findings were then made.

In early 2009, Mr. Moody complained to the FHWA that the City of Franklin was engaged in fraud, waste, and abuse related to the Project and specifically with respect to the storm water management system and the "Roaring Run" drainage pipe. The FHWA responded to Mr. Moody's correspondence and met with him to discuss his concerns. The FHWA then appointed an engineer to review Mr. Moody's allegations and the Project, including the storm water management system and the "Roaring Run pipe." After a comprehensive review, the FHWA informed Mr. Moody of its findings. Specifically, the FHWA informed Mr. Moody that the "Roaring Run pipe" was not of adequate capacity to reduce flooding potential; however, the "Roaring Run" drainage problems were completely unrelated to the Project and not eligible for federal transportation funds. The FHWA also informed Mr. Moody that it was coordinating with INDOT to ensure that certain conditions be met related to the drainage system within the Project before the FHWA would approve additional federal funds for the Project.

On July 10, 2010, the FHWA informed the City of Franklin that it had completed its review of the proposals for the hydraulic systems for the Roaring Run pipe and the Project and determined that INDOT would become the lead agency to conduct further reviews and take future approval actions related to the Project. On July 26, 2010, INDOT re-issued its "no adverse effects" finding relative to the revisions which had been made in the scope of the Project. In doing so, INDOT certified that "the project's economic and social effects of the location [and] its impacts on the environment, [are] consistent with the goals and objectives of urban planning as promulgated by the Community [and] have been considered." Actual construction on the Project began in the spring of 2012.

Mr. Moody's lawsuit was filed on July 2, 2012 naming numerous defendants. Thereafter, this Court dismissed the redundant official-capacity claims. *See* Dkt. 48. The following Table shows which claims are asserted against the agencies headed by the Defendants.

| Claim | Description | Agency |
|-------|-------------|--------|
| 1 | Violated NEPA by issuing a CE for the Project rather than an Environmental Assessment | FHWA, INDOT, City of Franklin |
| 2 | adding a drainage component to the Project without "properly considering possible alternatives that NEPA may have mandated" | City of Franklin |
| 3 | Violated NEPA by approving the Project without adequate input from Moody | FHWA, INDOT |
| 4 | Violated Executive Order 12731 | FHWA |
| 5 | Violated the National Historic Preservation Act and § 4(f) of Transportation Act | FHWA, INDOT, City of Franklin |
| 6 | Improper development of the Project through making false statements and concealing information | City of Franklin |
| 7 | Providing misinformation and inflammatory information at public meetings | City of Franklin |
| 8 | City of Franklin officials acted under a conflict of interest in advocating the Project | City of Franklin |
| 9 | Solicited and acted on incorrect information and acted without the professional expertise to do so | City of Franklin |
| 10 | Improper local employee assignment/designation | City of Franklin |

| 11 | Violated NEPA by issuing a CE for the Project rather than an Environmental Assessment | INDOT and City of Franklin |
|---|---|---|

## III. **DISCUSSION**

In Part II.B. of the Entry issued on September 25, 2012 (Dkt. 25), the Court discussed

Mr. Moody's NEPA claims, and dismissed those claims as legally insufficient in the manner

presented. *Citizens for Appropriate Rural Roads, Inc. v. LaHood*, 2012 WL 442747, *3

(S.D.Ind. Feb. 10, 2012) ("NEPA does not confer a private right of action.") (citing cases).

Instead, "review of agency action under NEPA is governed by the [Administrative Procedures

Act]." *Id.* That ruling stands. There is an issue of timeliness of the remaining claims, so this is

where the Court begins its analysis, and then, review will be conducted as dictated by the APA.

This tracks the Defendants' arguments.

"Although the Seventh Circuit has not ruled directly on the issue, numerous courts have

ruled that the six-year time limit in 28 U.S.C. § 2401(a) applies to NEPA claims and that a

complaint under the APA for review of an agency action is a 'civil action' within the meaning of

§ 2401(a)." *Heartwood, Inc. v. U.S. Forest Serv.*, 73 F. Supp. 2d 962, 970 (S.D.Ill. 1999) *aff'd,*

230 F.3d 947 (7th Cir. 2000). The rationale for this rule is this:

> The APA does not include its own statute of limitations. In fact, appellants
> contend that the application of a limitations period to its NEPA . . . claims would
> run counter to the protective purposes of those statutes, and urge this court instead
> to analyze its claims under the equitable doctrine of laches. According to the
> general statute of limitations for claims against the government, however, "every
> civil action commenced against the United States shall be barred unless the
> complaint is filed within six years after the right of action first accrues." 28
> U.S.C. § 2401(a). Because an action against a federal agency is an action against
> the United States, "a complaint under the APA for review of an agency action is a
> 'civil action' within the meaning of section 2401(a)." *Sierra Club [v. Slater,* 120
> F.3d 623,] 631 (6th Cir. 1997)]; *accord Sierra Club v. Penfold,* 857 F.2d 1307,
> 1315 (9th Cir. 1988); *Impro Prods., Inc. v. Block,* 722 F.2d 845, 849–50 & n.8
> (D.C.Cir. 1983). The plain language of this statute thus encompasses actions such

as this one, and the Neighborhood Association's NEPA . . . claims are subject to its six-year limitation.

*Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 186 (4th Cir. 1999).

Mr. Moody has not disputed that the pertinent date for the running of the statute of limitations in the controversy he has brought before the Court is the FHWA's issuance of a CE on September 8, 2005. The premise of this assertion, that issuance of the CE, constitutes "final agency action" for purposes of challenge under the APA, is correct. *Sw. Williamson Cnty. Cmty. Ass'n, Inc. v. Slater*, 173 F.3d 1033, 1036 (6th Cir. 1999); *see also Franklin v. Massachusetts,* 505 U.S. 788, 797 (1992) (in determining whether a particular agency action is final, "[t]he core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties").

Thus, with the final agency action having been taken on September 8, 2005, and with Mr. Moody's complaint having been filed on July 2, 2012, it is evident that his NEPA claims were not timely brought. The complaint was filed 10 months after the statute of limitations expired and Mr. Moody has offered no reason why this computation is not correct and conclusive.

Moreover, even if the statute of limitations was not a barrier, Mr. Moody's NEPA claims would fail. "NEPA was enacted to regulate government activity that significantly impacts the environment and 'to help public officials make decisions that are based on an understanding of environmental consequences, and take actions that protect, restore, and enhance the environment.'" *Heartwood, Inc. v. U.S. Forest Serv.*, 230 F.3d 947, 949 (7th Cir. 2000) (quoting 40 C.F.R. § 1500.1(c)). As such, NEPA is the "basic national charter for protection of the environment." *Id.*

NEPA prescribes a set of "action-forcing" measures that require federal agencies to take a "hard look" at the environmental consequences of major federal actions before they are taken. *See* 42 U.S.C. § 4332; *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 348–49 (1989). "NEPA . . . simply guarantees a particular procedure, not a particular result." *Ohio Forestry Ass'n v. Sierra Club,* 523 U.S. 726, 737 (1998).

"The APA authorizes suit by '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute.'" *Norton v. Southern Utah Wilderness Alliance,* 542 U.S. 55, 61 (2004)(discussing 5 U.S.C. § 702). "[A]gency action is defined . . . to include 'the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.'" *Id.* at 62.

Applying these principles, the APA allows courts to set aside agency actions only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). When conducting such review, a court "must determine whether an agency action is: (1) arbitrary and capricious; (2) an abuse of discretion; or (3) otherwise not in accordance with the law. Additionally, when reviewing an agency's interpretation of its own implementing procedures, the court should give substantial deference to that agency's interpretation. The Supreme Court has held that ultimately, the standard of review when examining an agency's decision under NEPA is a narrow one." *Heartwood, Inc.,* 230 F.3d at 953(internal citations omitted). Under the APA, a court evaluates agency action by "review[ing] the whole record or those parts of it cited by a party." 5 U.S.C. § 706.

CEs are permissible projects "that do not individually or cumulatively have a significant effect on human environment." 40 C.F.R. § 1507.3(b)(2). As has been recounted, the

9

administrative record shows that the FHWA and the other Defendants complied with both the spirit and the letter of the regulations which prevail in this area. They did so in a dynamic and effective manner, contacting and cooperating with other stakeholders in the community, revising in mid-stream, so to speak, and following the procedures and applying the criteria for issuing a CE. *See* 23 C.F.R. § 771.117(c)(1). In these circumstances, issuance of the CE was not arbitrary and capricious, was not an abuse of discretion, and was not otherwise not in accordance with law. For these reasons, Mr. Moody's NEPA challenges to the CE determination fail.

The other federal statutes relied on by Mr. Moody do not offer him any relief. Specifically, the National Historic Preservation Act "imposes duties on federal agencies with respect to 'historic properties which are owned or controlled by such agency.'" *Old Town Neighborhood Ass'n Inc. v. Kauffman*, 333 F.3d 732, 735 (7th Cir. 2003) (quoting 16 U.S.C. § 470h–2(a)(1)). Here, there is no showing or suggestion that the FHWA owns or controls the portion of North Main Street in the City of Franklin which is impacted by the Project. As to the Transportation Act claim, there is no indication that North Main Street in the City of Franklin is a protected resource under § 4(f). See *Defenders of Wildlife v. N. Carolina Dep't of Transp.*, 2013 WL 5216630 (E.D.N.C. Sept. 16, 2013) ("Section 4(f) imposes substantive limits on the discretion of the United States Secretary of Transportation to approve federally-funded projects that use certain protected lands or resources. Specifically, Section 4(f) prohibits federal approval or funding of a transportation project that requires the use of protected land, such as a wildlife and waterfowl refuge or public park, unless '(1) there is no prudent and feasible alternative to using that land; and (2) the program or project includes all possible planning to minimize harm to

the [protected property] resulting from the use.'") (footnote omitted) (quoting 49 U.S.C. §
303(c)). Therefore, summary judgment must be granted on these claims.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' Motions for Summary Judgment (Dkts
80, 83, and 86) are **GRANTED**. Final Judgment consistent with this Entry and with the Entry of
September 25, 2012, shall now issue.

**SO ORDERED.**

Date: 03/27/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Gary W. Moody
299½ Madison Street
Franklin, Indiana 46131

Julie E. Lang
OFFICE OF THE INDIANA ATTORNEY GENERAL
julie.lang@atg.in.gov

Timothy J. Junk
OFFICE OF THE INDIANA ATTORNEY GENERAL
tim.junk@atg.in.gov

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE
shelese.woods@usdoj.gov

Lynnette Gray
JOHNSON GRAY & MACABEE
vickyh@jgmlawfirm.com